THE KENT LAW FIRM, APC
Jeffrey D. Kent (SBN 162237)
1400 N. Harbor Blvd, Suite 601
Fullerton, CA 92835
Telephone: (714) 401-3827
Facsimile: (714) 908-3827
E-mail: jdkent@not-guilty.org

Attorney for Defendant
MELANIE CHRISTINE BELGER

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MELANIE CHRISTINE BELGER,<br><br>Defendant | No. 2:23-cr-00198-ACR<br><br><u>DEFENSE POSITION WITH RESPECT TO PRESENTENCING REPORT AND SENTENCING MEMORANDUM</u><br><br>Hearing Date: January 26, 2024<br>Hearing Time: 3:15 p.m.<br>Courtroom of Hon. Ana C. Reyes |

TO: THE HONORABLE ANA C. REYES, UNITED STATES DISTRICT JUDGE, THE UNITED STATES ATTORNEY'S OFFICE AND ITS ATTORNEY OF RECORD, ZACHARY PHILLIPS, AND MAIRI CERVANTES, UNITED STATES PROBATION OFFICER:

    Defendant MELANIE CHRISTINE BELGER, by and through her counsel of record Jeffrey D. Kent, hereby files its combined brief in regard to the Presentencing Report and Defense's Position Regarding Sentencing.

//

//

//

This pleading is based upon the attached memorandum of points and authorities, the files and records in the case, along with such further evidence and argument as the Court may permit or require during sentencing.

Dated: February 20, 2024                    Respectfully submitted,

                                            The Kent Law Firm, APC

                                            */s/ Jeffrey D. Kent*
                                            JEFFREY D. KENT
                                            Attorney for Defendant
                                            MELANIE CHRISTINE BELGER

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   POSITION REGARDING PRESENTENCE REPORT

### A. FACTUAL OBJECTIONS

The defense does not find any factual objections in the statement and findings in the Presentence Report ("PSR") for defendant.

### B. GUIDELINES

Pursuant to the United States Sentencing Guidelines (USSG) §1B1.9, the USSG do not apply to any count of conviction that is a Class B or C misdemeanor or an infraction. Ms. Belger pled to a single count of 40 U.S.C. § 5104(e)(2)(G), which is a Class B misdemeanor, and, as such, the USSG do not apply. The factors set forth in 18 U.S.C. § 3553(a) will be determined by the court in determining a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

However, as Ms. Belger has no Criminal History whatsoever, and would be a Criminal History I, if the USSG did apply, it is important to note that the United States Sentencing Commission ("USSC") retroactive zero-point amendment found in USSG §4Cl.1(a) went into effect November 1, 2023. The guidelines rate those with zero or one criminal history point at Criminal History I, putting them in the lowest sentencing range for any given Guidelines offense level. Part B of USSC Amendment 821 creates a new guideline at § 4C1.1(a) decreasing by two the offense levels for defendants who did not

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

receive any criminal history points. None of the disqualifying factors would apply to the defendant and Ms. Belger would be entitled to this additional two-point reduction. As such, the USSC is sending a message that Criminal History I defendants should be sentenced more leniently than they previously had been.

## C. RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

### a. Post-Plea Interview

In the Government's Consolidated Sentencing Memorandum ("GCSM"), the government recommends a sentence of 45 days incarceration, and restitution in the amount of $500.00. The government bases its request for incarceration largely on the government's belief that Ms. Belger and Ms. Estey were untruthful in their post-plea interview with the FBI. The government goes as far as to say "Belger's FBI statement was… misleading, if not as obviously false." (GCSM, p. 21) The basis for this alleged "false statement" is that it is difficult for the government to believe that Belger and Estey were separated, that Belger and Estey saw no police until being asked to leave Room ST-2M, and their denial of witnessing any violence that took place in the tunnel.

Ms. Belger has always maintained became separated from Ms. Estey for a period of time from 60 to 90 minutes after reaching the Capitol stairway and prior to entering the broken window. The government with all of its resources, access to phone records and GPS triangulation offers no evidence to refute these statements other than conjecture. It should be noted that the Statement of Offense (SOO) went back and forth

between counsel numerous times. Ms. Belger acknowledges being with Ms. Estey in paragraphs 8 and 9, and then in paragraphs 10 and 11 only refers to her own conduct. (SOO) This is because Ms. Belger and Ms. Estey were separated during most of that time period from the stairwell until entering Room ST-2M.

Ms. Belger and Ms. Estey didn't start making their way from lunch to the Capitol to approximately 2:30 pm. The government acknowledges that at 2:28 pm a "general retreat was called" of the Capitol Police. (GCSM, p. 7) This is consistent with Ms. Belger and Ms. Estey indicating that they witnessed no law enforcement until after entering Room ST-2M, and being ordered to leave by the first law enforcement in which they came into contact.

The government again speculates that Ms. Belger and Ms. Estey "were in very close proximity of the tunnel [where assaults occurred] and had sufficient time and ability to witness some of the events at the LWT tunnel prior to their breach of the Capitol." (GCSM, p. 9) First off, Ms. Belger never indicated or referred to anything as a Lower West Tunnel, or anything of the sort. Ms. Belger referred to a staircase, and an area next to bleachers prior to going through the window into Room ST-2M. Also, Ms. Belger is a 5 foot 6 inch woman in a large crowd of people during a time of tremendously loud noise. Even if violence occurred within 10 to 20 feet of her, to suggest that she could not see through all the people between her and any violence, and/or could not hear any specific shouts, yells or cries is far from unreasonable. It

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

would be incredibly difficult for her to see or hear anything that did not basically occur right at her feet or above her line of sight and over the heads of the individuals surrounding her. Looking through a crowd or deciphering sounds consistent with violence are the unreasonable acts the government is suggesting occurred.

The only violence Ms. Belger acknowledged and witnessed was seeing a few people with blood on their face, rubber bullets being fired and some type of gas being dispersed. Ms. Belger never witnessed anyone perpetrate an act of violence on another while at the Capitol; whether it be civilian on civilian, civilian on law enforcement or law enforcement on civilian.

Bottom line, Ms. Belger has been honest and forthright with the government throughout its investigation. From the time the FBI contacted Ms. Belger regarding this case, Ms. Belger arranged to meet and voluntarily surrender to the FBI, gave consent to have her cell phone searched, along with the password, has cooperated with pretrial services, has cooperated with probation and cooperated in the post-plea interview with the FBI.

The government also contends that a statement posted on social media by Ms. Belger, "Back at the Hotel! Was in the Capitol im safe.. Pence= NOT SAFE" is somehow alluding to future violence against then Vice President Pence is equally absurd. (GCSM, pp. 16 and 21) Interpreting comments made in electronic media is often dangerous as they can easily be taken out of context. Emotion and feeling are absent

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

from all such posts. This post was nothing more than a brief statement of the facts known to Ms. Belger at the time:

- Ms. Belger was back in her hotel room;

- Ms. Belger was in the Capitol and is currently in a safe space; and,

- Ms. Belger felt that then Vice President Pence was not currently in a safe space.

This is not in any way supporting, condoning, or encouraging any violence whatsoever.

However, all of this government speculation and conjecture really misses the point. Ms. Belger admits to being at the Capitol, being caught up in the activities that ensued, and entering the Capitol through a broken window into Room ST-2M. Ms. Belger did "huddle together" with Ms. Estey and also walked around Room ST-2M, she admitted that she was handed a broken leg from a chair, table or something similar. She held the object longer than she originally recalled, but can be seen in the government's exhibit videos holding the wooden object while standing still for several seconds as if a deer caught in the proverbial headlights. Ms. Belger indicated to probation and the FBI that she was astonished that anyone would harm these furnishings that she suspected could be a hundred years old or more.

Nothing mentioned above is to be taken in any way to suggest Ms. Belger does not take full responsibility for her actions, but to rather set the record straight and defend her integrity.

///

### b.  Case Comparison

***United States v. Mariposa Castro*** 21-cr-299-RBW

(discussed in the GCSM at p. 25.)

 

The government's comparison of Ms. Belger's conduct to that found in the *Castro* case is leaving out many very distinguishing factors. Ms. Belger and Ms. Estey did attend the Stop the Steal rally at the Ellipse as did Ms. Castro. Afterward, Ms. Belger and Ms. Estey went to lunch, as though the events of the day had ended. It was only after seeing people walking toward the Capitol and vans drive in the direction of the Capitol that Ms. Belger and Ms. Estey decided to see what was going on. At the time, they thought that there may be another speech that was going to be given. They then began there walk toward the Capitol.

Castro also left after the rally, but went to her hotel room. Castro then saw the crowds going to the Capitol and decided to join in. This is where the comparison should end. Castro's acts were far in excess of anything Ms. Belger did on January 6th. The government's Sentencing Memorandum in the Castro case (at pp. 2-3) [Exhibit A], sets out very distinguishing factors:

Ms. Castro

- "filmed and commented on the rioters' assault on the Lower West Terrace for nearly 30 minutes;"

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

- "repeatedly stated her intent to break into the Capitol;"

- "broadcast to her social media followers her entry and unlawful presence in the Capitol Building, exclaiming, 'we're going in the Capitol. We're in! We're inside the Capitol House! We got inside the Capitol!';"

- "remained on restricted Capitol grounds and continued filming herself while fellow rioters retrieved objects from Room ST-2M to be used as weapons against law enforcement officers;"

- "continued to glorify the riot and advocate violence as she left the Capitol Grounds, even stating to her followers, 'we're coming, this is war,' when another individual walking with her threatened, 'traitors will be shot. Pence, we're coming'"; and

- "has shown no apparent remorse for her self-proclaimed 'brave' misconduct on January 6, 2021."

For this conduct, the government recommended that Ms. Castro be sentenced to sixty days' incarceration. (*Castro* Government's Sentencing Memorandum at p. 2) Ms. Castro received a sentence of 45 days' incarceration. (GCSM, p. 25)

Ms. Belger is not accused of *any* similar conduct other than her entry into ST-2M and therefore the comparison is misleading.

//

//

***United States v. Honeycutt***, 22-cr-50-CJN

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

9

(discussed in the GCSM at p. 26.)

The conduct in the Honeycutt matter was also more egregious than Ms. Belger's conduct.  The government compared this case to Ms. Belger's case because Mr. Honeycutt, like Ms. Belger, was in Room ST-2M and witnessed the destruction that occurred in that room. The government distinguishes Mr. Honeycutt's conduct from Ms. Belger only in that he "took the additional step of passing a long wooden plank outside the Capitol to other rioters to use against police officers." (GCSM, p. 26.) This completely omits Mr. Honeycutt's additional conduct, which is far more serious than anything Ms. Belger did.

According to the government's Sentencing Memorandum in the Honeycutt case (at p. 2) [Exhibit B]:

Mr. Honeycutt

- "filmed, handled, and posted videos of property destruction within [the Capitol conference room];"

- "posted images to social media of confrontations between rioters and police and property destruction committed by other rioters, then mocked the vastly outnumbered police officers who were trying to defend the Capitol on the West Terrace for 'hiding' from the mob;"

- "helped to pass a long wooden plank to other rioters who were violently battling police in the Lower West Terrace Tunnel after he had exited the

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

Capitol Building;" and

- "initially posted images of his participation on social media but deleted them several days later and a gave false explanation of his conduct on Facebook that minimized his involvement in the riot. "

For this conduct, the government recommended that Mr. Honeycutt be sentenced to ninety days' incarceration. (*Honeycutt* Sentencing Memorandum at p. 2.) Mr. Honeycutt received the recommended sentence. (GCSM, p. 26)

For the government to compare Mr. Honeycutt's conduct to Ms. Belger's conduct is misleading. Ms. Belger was witness to some destruction in Room ST-2M, but was in no way an instigator or participant in that destruction.

Ms. Belger also entered Room ST-2M, but that is where the similarities end. The additional conduct exhibited by Ms. Castro and Mr. Honeycutt significantly distinguishes those two cases from the present case. Ms. Belger did not film her acts or the events inside Room ST-2M, she did not post such videos or photos on social media, she did not encourage the crowd, she did not engage in inciting behavior, she did not engage in any destructive behavior or words, and she has expressed deep remorse for her involvement in the events of January 6th.

### D. APPLYING THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. §3553(a)

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

In deciding the sentence to impose, this court considers all of the statutory sentencing factors set forth in 18 U.S.C. §3553(a), including, among other factors, the nature and circumstances of the offense; the history and characteristics of the offender; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparity. (18 U.S.C. §3553).

> **a. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Ms. Belger is a 57-year-old, divorced mother, who is a pillar of her community, active in community service, and homeowner who works a demanding full-time career. Ms. Belger and her ex-husband co-parented to raise a law-abiding and successful son. Ms. Belger has never had anything more than a traffic violation her entire life.

On January 6th, Ms. Belger never engaged in any violence, destruction, threatening words or behavior. Moreover, Ms. Belger never attempted to incite others to act in a violent, destructive manner.

Ms. Belger cooperated with the FBI from the time they initially contacted her. Ms. Belger hired counsel, arranged to voluntarily surrender to the FBI, consented to a search of her cell phone willingly gave her password, and was always honest and forthright with the government, pretrial services and probation. Ms. Belger has always expressed remorse for her actions, and accepted responsibility at an early stage in the proceedings.

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

This act is clearly out of character and inconsistent with her lifetime of leading a law-abiding life. Ms. Belger has acknowledged she became caught up in the energy of the day, and exercised poor judgment. Ms. Belger doesn't deny she wanted to do a "sit in" inside the Capitol after being outside for a couple hours, but she found herself in the midst of rubber bullets and pepper spray, which caused her to enter the broken window to seek refuge.

Ms. Belger has cooperated with probation and fully complied with all of her conditions pre-trial release since October of 2022.

**b.  Applying the 18 U.S.C. Section 3553(a) Factors**

A sentence of probation can adequately address all of the factors and goals of sentencing in this matter. The incident occurred on January 6th of 2021, but the government did not make contact with Ms. Belger regarding an investigation or charges until October of 2022. During this time period, Ms. Belger was back to living the law-abiding life she has for 57 years. There was no ongoing activities related to illegal conduct or anything of the sort. Now, over 3 years from the date of the incident, Ms. Belger continues to show she is a law-abiding citizen. This was an aberrant act, and the likelihood of it reoccurring is negligible.

Ms. Belger's intent in going to Washington D.C. for the Stop the Steal rally was really a send off of former President Trump, and not in her wildest imagination did she ever think anything like what occurred would occur. Ms. Belger has the deepest

Defense Position with Respect to Presentencing Report and Sentencing Memorandum

sympathies for the damage done to the Capitol, which she loves, and more importantly, to those that were harmed.

As the court is aware, there have been literally hundreds of these cases, and probation in this matter would be consistent with all the factors found in 18 U.S.C. § 3553(a).

## E. CONCLUSION

For all the above reasons, consistent with the recommendation set forth in the PSR, and the appropriate sentencing considerations under 18 U.S.C. Section 3553(a), Ms. Belger respectfully requests that this Court impose a sentence of probation and no custody. A sentence of 6 to 12 months of probation along with: (1) $500 in restitution; and, (2) a $10.00 special assessment would be sufficient, but not greater than necessary, to achieve the objectives of sentencing set forth at 18 U.S.C. § 3553(a)(2).


Dated: February 20, 2024                    Respectfully submitted,

                                            The Kent Law Firm, APC

                                            */s/ Jeffrey D. Kent*
                                            JEFFREY D. KENT
                                            Attorney for Defendant
                                            MELANIE CHRISTINE BELGER

Defense Position with Respect to Presentencing Report and Sentencing Memorandum